Jerry Lorenzo BASS, a/k/a Afif Abdul R. Karriem, Plaintiff–Appellant,

v.

Kevin ROBINSON; James Lashbrook, Defendants–Appellees.

No. 97–1326.

United States Court of Appeals, Sixth Circuit.

Submitted July 31, 1998.

Decided Feb. 12, 1999.

Jerry Lorenzo Bass (briefed), Muskegon Correctional Facility, Muskegon, Michigan, for Plaintiff–Appellant.

Sharon D. Blackmon (briefed), Detroit City Law Department, Detroit, Michigan, for Defedants–Appellees.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, Jerry Lorenzo Bass, a/k/a Afif Abdul R. Karriem, proceeding *pro se*, appeals from the district court's order granting summary judgment to Defendants, Kevin Robinson and James Lashbrook, in this civil rights action. Because we find that a genuine issue of material fact exists as to whether Defendants—both police officers for the City of Detroit—used excessive force in effectuating Plaintiff's arrest, the district court's order is **AFFIRMED IN PART, REVERSED IN PART**, and the case is **REMANDED** for trial.

## BACKGROUND

On August 12, 1993, Plaintiff was arrested by Defendants for selling narcotics to two undercover police officers. Plaintiff was charged with delivery of cocaine and possession with intent to deliver cocaine. The case proceeded to a jury trial in Wayne County Circuit Court; however, the record is conflicting as to whether the jury returned a guilty verdict on these charges, and Plaintiff subsequently pleaded guilty to being a second habitual offender (Plaintiff's rendition of the events); or whether Plaintiff pleaded guilty to these charges before the conclusion of his trial, and then subsequently pleaded guilty to being a second habitual offender (rendition of events cited in the Magistrate's Report and Recommendation). Nonetheless, portions of transcript testimony provided in the joint appendix indicate that Plaintiff did, in fact, plead guilty to being a second habitual offender. Plaintiff was subsequently sentenced to twelve to twenty-four years imprisonment.

The facts relating to the amount of force used to effect Plaintiff's arrest are in dispute and serve as the basis for his civil rights action. Plaintiff contends that, on the evening in question, he was walking down the street in the area known as the "Cass Corridor" in the City of Detroit, when Officer Robinson ordered him to stop. Plaintiff claims that he complied with the order; however, despite his cooperation, Officer Robinson attacked him both verbally and physically. Plaintiff contends that Officer Robinson put him in a "headlock" and slammed Plaintiff's head against a tree several times, resulting in injuries to Plaintiff's ear, head, neck and back.

Defendants claim that Plaintiff and an alleged accomplice sold drugs to two undercover officers, and that after the transaction was completed, the undercover officers radioed the "arrest crew," of which Defendants were a part, to arrest the suspects. Defendants maintain that Plaintiff resisted, which necessitated Officer Robinson using minimal force to restrain Plaintiff in order to effectuate the arrest. Defendants contend that Plaintiff sustained a minor laceration to his right ear during the ensuing struggle due to Plaintiff's own attempts to flee. Plaintiff was found to be in possession of heroin and cocaine at the time of the arrest. After processing Plaintiff at the police precinct, Defendants transported Plaintiff to Detroit Receiving Hospital where he was treated and released.

On August 16, 1995, Plaintiff filed the instant suit, *in forma pauperis*, claiming that Defendants' actions violated his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, in Counts I and II of his complaint, Plaintiff claimed that Defendants used excessive force in arresting Plaintiff on August 12, 1993, in violation of the Eighth (Count I), Fifth, and Fourteenth Amendments (Count II). In Count III, Plaintiff alleged that Defendants conspired to

deprive Plaintiff of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985. In Count IV, Plaintiff alleged that Lieutenant Lashbrook failed to prevent the injuries Plaintiff sustained at the hand of Officer Robinson, and that Lieutenant Lashbrook participated in a cover-up of the incident after the fact in violation of 42 U.S.C. § 1986. Finally, in Count V, Plaintiff alleged that Defendants denied him equal protection of the law as guaranteed by the United States and Michigan constitutions.

The case proceeded before Magistrate Judge Steven Pepe. Defendants filed a motion for summary judgment, and, on October 30, 1996, the magistrate judge issued a Report and Recommendation regarding Defendants' motion. The magistrate judge recommended that summary judgment be denied as to Plaintiff's claims for violation of his Fourth Amendment rights because genuine issues of fact remained for trial as to whether Officer Robinson used excessive force in arresting Plaintiff and as to whether Lieutenant Lashbrook permitted Officer Robinson's actions. However, the magistrate recommended that Plaintiff's claims brought under the Eighth Amendment, as well as his claims for violation of procedural due process and equal protection under state and federal law be dismissed, and also recommended that Defendants' motion for summary judgment be granted as to Plaintiff's conspiracy claims.

On November 6, 1998, Plaintiff filed an objection to the magistrate judge's recommendation and, after reviewing the same, United States District Court Judge Lawrence Zatkoff issued an opinion and order accepting in part and rejecting in part the magistrate's recommendation. Specifically, the district judge found that:

(1) Magistrate's Recommendation dismissing plaintiff's claims under the Eighth Amendment, for violation of his right to procedural due process and equal protection under state and federal law is hereby ADOPTED as the opinion of the Court;

(2) Magistrate's Recommendation dismissing plaintiff's conspiracy claim is hereby ADOPTED as the opinion of this Court;

(3) Magistrate's Recommendation that de-

fendants' motion for summary judgment be denied as to plaintiff's claims under the Fourth Amendment is REJECTED.

*Bass v. Robinson,* No. 95–CV–73197 DT, at 2 (E.D.Mich. Feb. 24, 1997). The district court thereby granted Defendants summary judgment as to all of Plaintiff's claims, and dismissed Plaintiff's complaint. Plaintiff, proceeding *pro se,* filed this timely appeal from the district court's order.

## ANALYSIS

This Court reviews a motion for summary judgment brought pursuant to Fed.R.Civ.P. 56 *de novo. Johnson v. Hills & Dales Gen. Hosp.,* 40 F.3d 837, 839 (6th Cir.1994). Summary judgment is appropriate where no genuine issue of material fact remains for trial and the moving party is entitled to judgment as a matter of law. *Id.* The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A.

### *Violation of Plaintiff's Fourth Amendment Rights*

### Liability of Officer Robinson

Plaintiff claims that the district court erred in summarily dismissing his claim against Officer Robinson because he presented sufficient evidence to create genuine issues of fact for trial as to whether excessive force was used by Officer Robinson in effectuating Plaintiff's arrest. Specifically, Plaintiff claims that his verified allegations that he stopped at Officer Robinson's command and did not attempt to flee or resist arrest, along with Lieutenant Lashbrook's trial testimony that a photograph taken of Plaintiff at the police department showed some blood on Plaintiff's right shoulder, as well as the police

log for the day which indicates that Plaintiff had been "injured" and had a "minor cut on rt ear" create factual issues as to whether Officer Robinson used excessive force in arresting Plaintiff. In addition, Plaintiff also contends that Officer Robinson's trial testimony creates an issue of fact as to whether Plaintiff resisted arrest. The portion of Officer Robinson's testimony to which Plaintiff refers states as follows:

Q: Did you [Robinson] ever lay your hands on him [Plaintiff]?

A: Yes.

Q: Under what circumstances?

A: On his arm as he was facing the tree. There was a tree right near where he was detained by Officer Gammichia (phonetic) [an undercover officer]. I assisted—

Q: (Interposing) Did you—I'm sorry. I thought you were finished. Go ahead.

A: And Officer Gammichia (phonetic) was placing cuffs on him and I just—assisted him by holding his arm, so he—

Q: (Interposing) Okay.

A: —wouldn't try to get away or anything.

Q: Okay. Was he resisting?

A: No, not that I recall.

Unlike the magistrate, the district court was not persuaded that this evidence created a genuine issue of fact as to whether Plaintiff resisted arrest and as to whether excessive force was used. The district court did not believe that Officer Robinson's trial testimony created an issue of fact because "Defendant Robinson never stated that Plaintiff offered no resistance to the arrest, *but testified only that at that time the handcuffs were finally being placed on Plaintiff, he was not resisting.*" *Bass*, No. 95–CV–73197 DT, at 7 (emphasis in original). In addition, the district court found that:

The events that comprise the basis for this instant action, transpired in a reputed area of high drug trafficking. It is well-known that drug trafficking activities are often associated with the possession of firearms. It is these types of circumstances in which police officers often encounter situations in which the possibility for a sudden explosive exchange is significant. Plaintiff was a suspected drug trafficker, who prior to the arrest giving rise to this action, engaged in the sale of narcotics with undercover police officers; *an activity to which plaintiff consequently pled guilty to and was subsequently sentenced to 12–20 years imprisonment for.* When radioed by the undercover police officers to arrest plaintiff, defendants Robinson and Lashbrook had every reason to suspect that they could be [sic] possibly be dealing with an armed drug trafficker, who potentially posed an immediate threat to their safety, and to the safety of others. Furthermore, according to the defendants, plaintiff attempted to flee when defendants approached and identified themselves.

\*　　\*　　\*

Regardless of plaintiff's unfounded allegations, the amount of force used by defendants in effectuating the arrest of plaintiff, was objectively reasonable considering the circumstances with which the officers were faced.

*Id.* at 7–8 (emphasis in original). We disagree with the district court's analysis and conclusion.

 The use of excessive force by law enforcement officials in effectuating an arrest may give rise to a claim under 42 U.S.C. § 1983. *See Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989), the Supreme Court held that claims alleging excessive force brought against law enforcement officials are to be analyzed under the "objective reasonableness" standard of the Fourth Amendment. The Court cautioned that the proper application of this reasonableness standard "requires a careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865; *see Patrick v. City of Detroit*, 906 F.2d 1108, 1115

(6th Cir.1990).[1] The question is whether the totality of the circumstances justifies a particular sort of seizure, and the question must be answered "without regard to [the officer's] underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. "The 'reasonableness' must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865.

The Court qualified this objective inquiry into the reasonableness of a police officer's conduct by stating:

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865; *see Pleasant v. Zamieski,* 895 F.2d 272, 276 (6th Cir.1990).

 Considering Officer Robinson's actions under an objective standard of reasonableness as set forth above, genuine issues of fact remain for trial as to whether the amount of force used to effectuate the arrest was excessive. As noted by the magistrate judge, if a trier of fact found Plaintiff credible and his allegations true and supported by the evidence, then it could reasonably find that Officer Robinson violated Plaintiff's Fourth Amendment right to unreasonable seizure. *See Patrick,* 906 F.2d at 1114–15.

In *Jackson v. Hoylman,* 933 F.2d 401, 403 (6th Cir.1991), this Court found that, where "[t]he parties dispute virtually all of the essential facts surrounding the excessive force claim[,] ... it is impossible to determine, without choosing between the parties' sharply different factual accounts, whether the force the officers used, objectively assessed, was reasonable." The *Jackson* Court further

noted that under a rule 56 analysis, the facts are to be construed in the light most favorable to Plaintiff, and therefore held that summary judgment of the Plaintiff's claim alleging excessive force in violation of the Fourth Amendment was properly denied. *Id.*

Likewise, in *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994), when confronted with conflicting facts surrounding a plaintiff's allegation of excessive force against the arresting police officers, this Court reversed the district court's decision granting the police officers summary judgment. In doing so, this Court stated as follows:

> In the present case, plaintiff presented direct evidence in the form of witness Sanderford's and witness Clay's testimony, which contradicts the account of events provided by the police. For the purposes of a summary judgment motion, their accounts and all reasonable inferences drawn from it [sic] must be accepted as true. Thus, the district court erred in finding plaintiff's and the two witnesses' accounts implausible and in granting summary judgment where issue of credibility were determinative of the case at hand.

*Id.* at 382 (citation omitted).

Here, Defendants' motion for summary judgment should have been denied because it was impossible for the district court to make an objective determination under these contested facts which turn on credibility, and because this Court must consider any evidence in the light most favorable to Plaintiff. *See Adams,* 31 F.3d at 382; *Jackson,* 933 F.2d at 403; *see also Harris v. City of Akron,* 20 F.3d 1396, 1403 (6th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)) (noting that a judge may not make credibility determinations or weigh the evidence when considering a motion for summary judgment). Plaintiff's allegations against Defendants as well as his supporting documentary evidence, such as the police photograph taken after the arrest indicating

---

**1.** A factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of the injury inflicted. This factor is relevant to a claim brought under the Eighth Amendment for cruel

and unusual punishment. *See Herring v. Lacy,* No. 95–3535, 1996 WL 109491, at *5 (6th Cir. 1996) (unpublished *per curiam* table decision); *Parrish v. Johnson,* 800 F.2d 600, 604–05 (6th Cir.1986).

blood on Plaintiff's shoulder as well as the police log indicating that Plaintiff was injured, when weighed and taken in the light most favorable to Plaintiff, give rise to a genuine issue of material fact as to whether excessive force was used. *See, e.g., Adams,* 31 F.3d at 382.

In finding otherwise, the district court erred in that it did not take Plaintiff's properly-presented evidence as true, and instead engaged in a subjective analysis giving deference to Defendants by taking their allegations as true. The district court found that the incident occurred in a reputed area of high drug trafficking; that it is "well-known" that drug trafficking activities are often associated with the possession of firearms; and that Plaintiff was a suspected drug trafficker who had, just prior to the arrest, engaged in the sale of narcotics to an undercover officer. In addition, the district court emphasized that Plaintiff subsequently pleaded guilty to the offense. However, these findings do not support an objective determination that Officer Robinson acted in a reasonable manner as a matter of law, and ignore Plaintiff's allegation that he did not resist Officer Robinson in any way, as well as the direct evidence such as the photograph indicating blood on Plaintiff's right shoulder and the police log indicating that Plaintiff had been injured. Furthermore, even if it is true that the geographical area in question is known for drug sales, that drug sales often involve firearms, and that Plaintiff had just sold narcotics to an undercover police officer, this in no way unquestionably proves that Officer Robinson's actions were reasonable under the circumstances. In addition, the fact that Plaintiff *later* pleaded guilty to the offense in no way proves that Officer Robinson, or a reasonable officer similarly situated, would have had an objective reasonable belief *at the time* that force was necessary to make the arrest. The district court's determination interjects its *subjective* belief that Officer Robinson acted in a reasonable fashion under the circumstances, rather than following the objective approach required by *Graham.*

### Liability of Lieutenant Lashbrook

Plaintiff contends that Lieutenant Lashbrook, as Officer Robinson's supervisor, failed to use his authority to prevent Officer Robinson from using the excess force that he knew was being used against Plaintiff during the arrest, and that Lieutenant Lashbrook subsequently condoned and acquiesced in Officer Robinson's alleged wrongdoings by misrepresenting or covering up facts in reports and in his testimony.

Defendants argue that Plaintiff's complaint failed to allege an excessive force claim under 42 U.S.C. § 1983 against Lieutenant Lashbrook. Defendants contend that a review of the complaint indicates that only Officer Robinson "is targeted" in Plaintiff's complaint regarding the § 1983 claims, and thus, no such claim may be pursued by Plaintiff against Lieutenant Lashbrook now. Construing Plaintiff's complaint liberally, which we must do inasmuch as Plaintiff is proceeding *pro se,* we find that Plaintiff pleaded an allegation of excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Lieutenant Lashbrook. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (finding that the *pro se* complaint filed by a prisoner alleging a deprivation of a federally protected right is held to a less stringent standard than formal pleadings drafted by lawyers); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir.1996).

■ Counts I and II of Plaintiff's complaint, although not titled, set forth his allegations of § 1983 violations. True enough, Plaintiff does not specifically name Lieutenant Lashbrook in these counts. However, in paragraph 13 of the complaint, the first paragraph noted under Count I, Plaintiff states that he "realleges all paragraphs as if fully set forth herein." Reference to the relevant previous paragraphs indicates as follows:

9. Defendant, Lt. Lashbrook, was the supervisor of defendant Kevin Robinson on the date of this assault, who failed to stop the assault on Plaintiff.

9. [sic] Defendant, Lt. James Lashbrook, covered up this incident by both he and defendant Kevin Robinson, by placing Plaintiff under arrest for narcotics possession.

10. Defendants, both of whom worked in concert, as a team, and as co-conspiratory [sic] issued, issued false arrest statements to hold Plaintiff in custody.

\* \* \*

12. Both Defendants compiled police reports, listing false facts, false evidence of narcotics, and false statements to sustained [sic] the false arrest and charges lodged against Plaintiff.

Therefore, because paragraph 13 under Count I "realleges all paragraphs as if fully set forth herein, and the paragraphs to which this statement refers specifically makes reference to Lieutenant Lashbrook and the Fourth Amendment violations Plaintiff seeks to enforce against him under § 1983, we conclude that Plaintiff pleaded a § 1983 claim against Lieutenant Lashbrook for excessive force.

■ In order for liability to attach to Lieutenant Lashbrook for the alleged actions of Officer Robinson, Plaintiff must prove that Lieutenant Lashbrook did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (1989); *see Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993). Plaintiff must show that Lashbrook otherwise encouraged or condoned the actions of Officer Robinson. *See Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir.1995). Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Leach,* 891 F.2d at 1246. Instead, the liability must be based upon active unconstitutional behavior. *Id.* Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence. *Id.*

We agree with the magistrate judge that Plaintiff alleged sufficient facts and supported the same with documentary evidence for a genuine issue of fact to remain as to whether Lieutenant Lashbrook's actions rose to the level of supervisory liability. As set forth above, Plaintiff's verified complaint indicates that Lieutenant Lashbrook failed to intervene to stop the assault. Plaintiff supported this allegation with an investigation report that he believes indicates that Lieutenant Lashbrook attempted to cover-up the incident, along with Plaintiff's affidavit stating that Lieutenant Lashbrook falsely testified at trial about the incident and set forth those portions of the trial transcript where Lieutenant Lashbrook allegedly provided false testimony in a "motion for trial" brought in federal court.[2] Plaintiff's complaint and this documentary evidence together give rise to a question of fact as to whether Lieutenant Lashbrook encouraged or condoned Officer Robinson's alleged use of excessive force. *See Copeland,* 57 F.3d at 481; *Leach,* 891 F.2d at 1246.

■ The district court did not address the issue of Lieutenant Lashbrook's liability in its opinion and order, apparently because it found that Officer Robinson did not violate Plaintiff's Fourth Amendment right as a matter of law. However, because we hold that the district court erred in granting Officer Robinson summary judgment on Plaintiff's excessive force claim, and because we find that a genuine issue of fact remains as to whether Lieutenant Lashbrook knowingly condoned Officer Robinson's actions, we conclude that Plaintiff's claim on this issue survives summary judgment.

### B.

### *Violation of Plaintiff's Eighth Amendment Rights*

In Count I of the complaint, Plaintiff alleges that Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment when excessive force was allegedly used during the arrest. We disagree and find the magistrate judge's reasoning, as adopted by the district court, proper in dismissing this claim.

■ As the magistrate judge correctly found, because the alleged misconduct oc-

---

**2.** We note that the investigation report to which Plaintiff refers appears to be a police investigation report; however, the report is not authenticated. However, inasmuch as Plaintiff is proceeding *pro se,* we will construe his allegations liberally. *Haines,* 404 U.S. at 520–21, 92 S.Ct. 594.

curred prior to Plaintiff's conviction, the Eighth Amendment was not implicated. In *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977), the Supreme Court held that, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Accordingly, in this case, summary judgment was proper where no genuine of fact remained that Plaintiff had yet to be "adjudicat[ed] of guilt" at the time of the alleged use of excessive force. *Id; see Graham*, 490 U.S. at 393 n. 6, 109 S.Ct. 1865.

### C.

### *Violation of Plaintiff's Fourteenth Amendment Rights*

At the outset, we note that the magistrate judge treated Plaintiff's claim as one for denial of Plaintiff's right to procedural due process, because Plaintiff alleged that Defendants' actions constituted a denial of a protected liberty interest under the United States and Michigan Constitutions, while noting that Plaintiff failed to assert facts that would constitute an equal protection claim. Defendants, however, address this claim as one for denial of equal protection of the laws of Michigan and the United States.

As alleged in his complaint, Plaintiff's claims which are relevant to this issue read as follows:

### *State Law Pendent Claim Count Five*

22. Plaintiff realleges all paragraphs one through twenty one as if fully set forth herein.

23. Plaintiff has a state created liberty interest in not being assaulted by officers of the law under Michigan Constitution, 1963 Art 1, § 2, under the equal protection of the law. This protection is also afforded under the Fourteenth Amendment's equal protection of the law safeguards.

23.[sic]The acts of commissions, coupled with the acts of omissions by both defendants deprived plaintiff of his civil rights, and constitutes a denial of a protected liberty interest in not being falsely accused assaulted, or denied the equal protection of the laws of the State of Michigan, as well as the United States of America.

Based upon these pleadings, and taking into consideration that the pleadings should be liberally construed inasmuch as Plaintiff is proceeding *pro se*, both the magistrate judges's as well as Defendants' interpretation of this claim are correct. *See Jennings*, 83 F.3d at 148. Therefore, we will analyze both the magistrate judge's view as well as Defendants' view on this issue; however, under either interpretation, Plaintiff's claim falls prey to summary judgment.

### 1. *Procedural Due Process Claims*

Plaintiff alleged that Defendants' actions constituted a denial of a protected liberty interest under the federal and state constitutions. The magistrate judge interpreted this as a claim that Defendants violated Plaintiff's right to procedural due process when they allegedly used excessive force against him during his arrest.

In *Hudson v. Palmer*, 468 U.S. 517, 534, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984), the Supreme Court stated that "[w]hether an individual employee is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." An unauthorized intentional deprivation of property by a state employee "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Id.* In *Zinermon v. Burch*, 494 U.S. 113, 131–32, 110 S.Ct. 975, 986–87, 108 L.Ed.2d 100 (1990), the Supreme Court expressly stated that the *Hudson* analysis extended to a deprivation of liberty as well as deprivation of property claim. The *Zinermon* Court also reaffirmed that, when analyzing such a claim, the court must determine whether the deprivation was "random," whether predeprivation due process was impracticable, and whether the state actor was not authorized to take the action that deprived the plaintiff of his liberty. *Id.* If so, then in order to prove a claim

for denial of procedural due process, the plaintiff must plead and prove that a post-deprevation remedy is not available. *Id.*

▮ Under the facts of this case, the alleged deprivation of liberty—Officer Robinson's alleged use of excessive force in effecting the arrest—was a random unauthorized incident, and a predeprivation hearing was therefore impracticable. Accordingly, Plaintiff · had to plead and come forward with evidence to create a genuine issue of fact that his postdeprivation remedies were inadequate in·order to·defeat Defendants' motion for summary judgment. *Zinermon,* 494 U.S. at 131–32, 110 S.Ct. 975. Because Plaintiff failed to plead that postdeprivation remedies were inadequate, his claim on this issue was properly dismissed.[3]

### 2. Equal Protection Claims

Plaintiff claims that Defendants' actions of using excessive force in effecting the arrest deprived him of equal protection of the law under the state and federal constitutions. We disagree.

▮ Because Plaintiff failed to allege invidious discrimination based upon his membership in a protected class, his equal protection claim fails at the inception. *See Oyler v. Boles,* · 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). In order for Plaintiff's claim to survive Defendants' motion, Plaintiff had to allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Id.* As explained by the Court of Appeals for the Seventh Circuit in *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167, 1171 (7th Cir. 1983), "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Inasmuch as Plaintiff merely alleged that he was treated unfairly as an individual by Defendants' · actions, his equal protection claim was properly dismissed. *Id.*[4]

### D.

### Conspiracy Claim Brought Under 42 U.S.C. § 1985

Plaintiff next alleges that the district court erred in granting summary judgment against his claim that Defendants conspired against him to deprive him of his constitutional right to equal protection of the law in violation of 42 U.S.C. § 1985. We disagree.

In *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971), the Supreme Court found that in order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

▮ Here, Plaintiff failed to allege or produce evidence that Defendants' use of excessive force was motivated by racial or other class-based animus, as required by *Griffin* to support such a claim. In addition, the record presented in the joint appendix is void of any such motivation. Therefore, the district court properly adopted the magistrate judge's recommendation in summarily dismissing Plaintiff's claim on this issue.[5]

---

3. As found by the magistrate judge, because Plaintiff's claim brought under the Michigan Constitution is the same as his claim brought under the federal constitution on this issue, summary judgment is appropriate as to the state allegation as well. *See, e.g., Doe v. Department of Social Serv.,* 439 Mich. 650, 487 N.W.2d 166 (1992).

4. This analysis applies to Plaintiff's claim brought under the equal protection clause of the Michigan Constitution as well, because the Michigan courts have interpreted this clause as being coextensive with the federal counterpart. *See Doe,* 439 Mich. 650, 487 N.W.2d 166 (1992); *Gora v. Ferndale,* 217 Mich.App. 295, 551 N.W.2d 454 (Mich.Ct.App.1996).

5. Because Plaintiff's conspiracy claim brought under 42 U.S.C. § 1985 cannot survive Defendants' motion for summary judgment, Plaintiff's

## E.

### Defendants' Qualified Immunity Defenses

 As a defense to liability, Defendants each claim that they are entitled to qualified immunity. The district court, having granted summary judgment to Defendants on all of Plaintiff's claims, did not address the issue of Defendants' qualified immunity defense. However, the magistrate judge recommended that because a genuine issue of material fact remained as to whether Defendants used excessive force in violation of a clearly established right, they were not entitled to qualified immunity on this issue. We agree with the magistrate judge, and hold that Defendants are not entitled to qualified immunity on this claim because a question of fact exists as to whether Defendants used excessive force and thus violated rights that were clearly established at the time. *See Jackson*, 933 F.2d at 403.

"In order to allow government officials to perform their discretionary duties without constant fear that each time they act they will be forced to defend themselves in a civil suit, the law protects government officials from suit unless their actions violate the 'clearly established law' of which a reasonable officer would be aware at the time of their actions." *Jackson*, 933 F.2d at 402 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). In *Anderson,* the Supreme Court defined the phrase "clearly established law" for purposes of a qualified immunity defense:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-

existing law the unlawfulness must be apparent.

483 U.S. at 640, 107 S.Ct. 3034.

A person's right to be free against excessive force during the course of an arrest is a clearly established right that existed at the time Defendants' arrested Plaintiff. *See Jackson*, 933 F.2d at 403. Because of the contested facts surrounding the use of force used to effectuate Plaintiff's arrest, a question also exists as to the reasonableness of Defendants' actions in light of clearly established law. *See Adams*, 31 F.3d at 387 (finding that summary judgment was improperly granted to the officers-defendants on qualified immunity grounds where genuine issues remained as to whether they used excessive force in arresting the plaintiff). Therefore, Defendants are not entitled to immunity with respect to Plaintiff's Fourth Amendment claim.

## CONCLUSION

The district court erred in granting Defendants summary judgment on Plaintiff's claim brought under the Fourth Amendment for the alleged use of excessive force during Plaintiff's arrest. However, the district court properly granted Defendants summary judgment on Plaintiff's remaining claims. Accordingly, the district court's order is **AFFIRMED IN PART, REVERSED IN PART**, and the case is **REMANDED** for proceedings consistent with this opinion.

claim against Lieutenant Lashbrook for failing to prevent a conspiracy under 42 U.S.C. § 1986, must also fail. *See Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir.1990) (finding that no

cause of action exists under § 1986, where a plaintiff has failed to state a claim under § 1985); *Haverstick Enters., Inc. v. Financial Fed. Credit*, 32 F.3d 989, 994 (6th Cir.1994).