NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1552
_____

PAMELA GOODE, Administratrix of the Estate of
Timothy Goode, deceased,
                                                                        Appellant

v.

CITY OF PHILADELPHIA; ANTHONY AVERY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cv-894)
District Judge:  Hon. Robert F. Kelly
_____

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2019

Before:  JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Opinion Filed:  June 6, 2019)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Pamela Goode, the mother of Timothy Goode and the administratrix of his estate, appeals the District Court's grant of summary judgment against her.[1] She argues that summary judgment was inappropriate because there were disputed issues of material fact. We disagree and will affirm.

## I.    BACKGROUND

### A.    Factual Background

In January 2008, Philadelphia police officers Anthony Avery and Oronde Watson were called in to assist in the arrest of two individuals believed to be drug dealers. The two suspects were, at the time, on a street corner in Germantown, Philadelphia. As the police approached, one of the men, Timothy Goode, began running away and went down Wayne Street. Avery began chasing Goode on foot, yelling, "police, stop; police, stop." (App. at 51.) Watson followed closely behind.

At one point, Avery was able to briefly grab Goode but could not stop him. Goode veered from the sidewalk into the traffic on Wayne Street; Avery followed and was hit by a passing car. Nevertheless, Avery continued the chase and Goode continued running. As Goode approached the corner of Wayne and Logan Streets, he threw away a bag containing 45 vials of crack cocaine.

---

[1] To distinguish the Appellant from her son, we will refer to her as Ms. Goode.

According to his deposition testimony, Avery, while still in pursuit, took his pistol out of its holster prior to turning the corner at Wayne and Logan.[2] After turning the corner, he was able to "grab[] on to … part of … [Goode's] jacket." (App. at 56.) As he did so, "[Avery] looked and [Goode] was coming up with [a] silver handgun." (App. at 54.) Avery testified that the handgun was aimed at his groin and midsection. As a result, he "immediately let go of [Goode] and fired… two rounds. [Goode] took a few steps and then he hit the ground." (App. at 54-55.) Goode's handgun fell from his hand and went between the sidewalk and a nearby car.[3] Moments later, a third police officer, James Poulos, who had been following behind Avery and Watson, turned the corner and heard Avery yell, "[h]e threw a gun, [h]e threw a gun." (App. at 138.)

Goode was taken to Temple University Hospital, where he was pronounced dead.[4]

## B.     Procedural Background

Pamela Goode brought suit against the City of Philadelphia and Avery (collectively, the "Defendants") on Timothy Goode's behalf, in the Philadelphia Court of Common Pleas, making claims under the Constitution and under Pennsylvania law. The constitutional violations she alleges are "Eighth Amendment violations of an individual's

---

[2] Avery's formal police statement said, however, that he merely "put [his] hand on [his] gun as [he] turned the corner." (App. at 129.)

[3] Ms. Goode claims that the gun did not fall but rather that her son threw it away or was attempting to throw it away before he was shot.

[4] The autopsy report revealed that one of the two shots went straight through Goode's abdomen, severing his spinal cord, and the other travelled upward through Goode's body, with "little right or left deviation." (App. at 94-95.)

3

right of protection from cruel and unusual punishment; [] Fourteenth Amendment violations of an individual's right to due process and equal protection of the laws; and [] Fourth Amendment violations of an individual's right against unlawful searches and seizures." (App. at 17, Compl. ¶¶ 11-18.)

The Defendants removed the case to the United States District Court for the Eastern District of Pennsylvania, and eventually moved for summary judgment. In her brief opposing summary judgment, Ms. Goode conceded that there were insufficient facts to pursue a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The issue thus became whether the remaining Defendant, Avery, was entitled to summary judgment. The Court determined the answer was yes. It engaged in a two-step analysis. First, it evaluated the facts Ms. Goode contended were disputed and material—for example, whether Goode intended to aim his handgun or to throw it away—and it decided those facts were either not material or undisputed.

Second, the Court addressed each of Ms. Goode's constitutional claims and concluded that each failed. Her Eighth Amendment claim failed because that Amendment "only applies following a conviction" and there was no "evidence showing a criminal conviction, incarceration, or state-imposed restraint of Mr. Goode at the time that he was shot." (App. at 18.) The Fourth and Fourteenth Amendment claims failed because Goode pointed his handgun at Avery, and thus, "[i]t was objectively reasonable for [] Avery to believe that use of deadly force was necessary[.]" (App. at 21.) The Court then dismissed the remaining state law claims without prejudice, declining to exercise supplemental jurisdiction.

4

Ms. Goode now appeals.

## II.    DISCUSSION[5]

The sole contention Ms. Goode advances on appeal is that the District Court should not have granted summary judgment because there is a genuine dispute of material fact about "whether [her son] had already thrown his gun away before being shot" or was attempting to do so.  (Opening Br. at 4.)  We are unpersuaded.[6]

### A.    Fourth Amendment Claim

First, we turn to the District Court's ruling on Ms. Goode's Fourth Amendment claim.  "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011).  The use of deadly force is a seizure, and it is unreasonable "unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Id.* at 183 (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)).

---

[5]  The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a).  And we have jurisdiction pursuant to 28 U.S.C. § 1291.  "Our review of the District Court's grant of summary judgment is plenary." *Capps v. Mondelez Glob., LLC,* 847 F.3d 144, 151 (3d Cir. 2017).  A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable inferences must be drawn in favor of the nonmoving party. *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 708 (3d Cir. 2018).

[6]  Because we are affirming the District Court's ruling on Ms. Goode's federal claims, we will likewise affirm the decision not to exercise supplemental jurisdiction over her state law claims.

Reasonableness is addressed "from the perspective of a reasonable officer on the scene[,]" and must take into account that police officers "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396, 397 (1989)). "An officer is not constitutionally required to wait until he sets eyes upon [a] weapon before employing deadly force to protect himself against a fleeing suspect who … moves as though to draw a gun." *Id.* (alteration in original) (citation omitted). Waiting to fire "in such circumstances could well prove fatal[,] [and] [p]olice officers do not enter into a suicide pact when they take an oath to uphold the Constitution." *Id.* Accordingly, the standard is one of "reasonableness at the moment" of the confrontation, and, from that perspective, a mistake "will be forgiven so long as the mistake is reasonable and the circumstances otherwise justify the use of such force." *Id.* (citation omitted).

The Supreme Court has held that, when "the suspect threatens the officer with a weapon …, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11-12; *see also Abraham v. Raso*, 183 F.3d 279, 289 (3d Cr. 1999) (explaining that courts must ask whether it was "objectively reasonable for the officer to believe … that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others"). Here, Goode was attempting to escape capture and arrest, and Avery had given several warnings and had ample reason to believe that Goode posed a significant threat of death or serious physical injury. Indeed,

6

the only available evidence shows that Goode produced a deadly weapon in a way that was reasonably perceived as threatening.

Ms. Goode points to several disputed and purportedly material facts to show that it was unclear whether Goode posed a threat because he may have been throwing the handgun away rather than aiming it at Avery. First, she notes small discrepancies between Avery's deposition testimony and his internal affairs investigation statement, particularly as to Goode's body position immediately prior to the shooting. It is true that there is a difference in Avery's accounts of Goode's body position, but the difference is insubstantial. At one point, Avery said that Goode was turning and "blading his body towards [him,]" (App. at 126); at another, Avery said that Goode was like "a runner … in a relay race" with "his head … partially turned so he could see [Avery,]" (App. at 130), and Goode's "body was facing away … but his head was partially turned to where he could see [Avery,]" (App. at 132). The material fact is that, as Avery consistently stated, he perceived Goode to be turning towards him and pointing a silver handgun at him.

Second, Ms. Goode argues that the autopsy report—showing two bullet trajectories, one upwards, following the spine, and another straight through the abdomen—leads to the "reasonable inference … that [Goode] was facing away from Avery when he was shot[,] not turned in a fashion" towards Avery. (Opening Br. at 18.) But Ms. Goode has not produced any evidence or expert testimony to substantiate that assertion. Speculation is not evidence.

Third, Ms. Goode contends there are material disputes of fact pertaining to when Avery actually removed his service weapon from its holster. Again, however, that

7

discrepancy, involving at most a few seconds during the chase, does not affect the reasonableness of Avery's perception of the risk posed by Goode.

Finally, Ms. Goode points to Poulos's statement that he overheard Avery say, "[h]e threw a gun, [h]e threw a gun[.]" (App. at 138.) Ms. Goode says that Avery made that statement after shooting Goode and that it raises "serious credibility issues[.]" (Opening Br. at 18.) But, Poulos did not witness the final encounter between Goode and Avery, nor does Poulos's statement assert or even imply that Goode was not aiming a gun at Avery at the time of the shooting. To the contrary, stretching Poulos's statement to mean that Goode had already thrown the gun away at the time of the shooting contradicts all available evidence.

In short, none of the facts relied on by Ms. Goode are material. What is material and determinative is that both Officer Avery and Officer Watson, who are the only witnesses to the crucial moment, stated that Goode aimed his handgun at Avery.[7] Ms. Goode is, in effect, "rely[ing] simply on the assertion that a reasonable jury could discredit [Avery and Watson's] account." *Lamont*, 637 F.3d at 182 (citation omitted). That is not enough to withstand summary judgment. *Id.*

We are left with unrebutted evidence that Goode actually drew a handgun and aimed it at Avery during a struggle with him. The record thus shows that Avery acted reasonably. *Lamont*, 637 F.3d at 183-84; *see also Abraham*, 183 F.3d at 289 ("Detached

_____

[7] Watson's account—"Q. Did the suspect point the gun at [] Avery? A. Yes he did[]" (App. at 137,)—and, Avery's account—the gun "was pointed at me" (App. at 64,)—both support the conclusion that, not only did Goode possess the gun when he was shot but that it was aimed at Avery.

reflection cannot be demanded in the presence of an uplifted [deadly weapon.]" (citing *Brown v. United States*, 256 U.S. 335, 343 (1921))).  Accordingly, we will affirm the District Court's ruling against Ms. Goode on her Fourth Amendment claim.

**B.      Eighth Amendment and Fourteenth Amendment Claims**

We also affirm the summary judgment against Ms. Goode on her remaining constitutional claims.  Both of those contain serious defects which prevent relief, regardless of the facts she has proffered.

Her Eighth Amendment claim fails because, as the District Court correctly noted, the Eighth Amendment's protections do not extend to someone like Goode who was "not yet at a stage of the criminal process where [he could] be punished because [he had] not … been convicted of anything." *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). He was thus "not within the ambit of the Eighth Amendment['s] prohibition against cruel and unusual punishment." *Id*. (alteration in original) (emphasis removed) (citation and internal quotation marks omitted).

Ms. Goode's Fourteenth Amendment claims likewise fail.  She says that Avery's use of deadly force in effectuating the arrest deprived her son of substantive due process and equal protection of the law.  But "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis removed).  Accordingly, Ms. Goode's substantive due process claim fails along with her Fourth Amendment claim.  As for her equal

9

protection claim, "[b]ecause [she] failed to allege invidious discrimination based upon [her son's] membership in a protected class, [the] equal protection claim fails at [its] inception." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Summary judgment on her Eighth and Fourteenth Amendment claims was therefore warranted.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment.