Keith DAVENPORT, Plaintiff,

v.

Ray SIMMONS, individually and as Chief of Police of the Humboldt Police Department, and Dennis Wright, Jimmy Arnold, Jim Kirkwood and James Avery, individually, Defendants.

No. 00–1224 BRE.

United States District Court,
W.D. Tennessee,
Eastern Division.

Sept. 13, 2001.

Sam J. Watridge, Shannon A. Jones, Humboldt, TN, for Plaintiff.

Milton Dale Conder, Jr., John D. Burleson, Jackson, TN, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BREEN, United States Magistrate Judge.

Before the court is the motion of defendants for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that a

... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on its pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The "judge" may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir.1994).

### FACTS

The following facts are undisputed unless otherwise noted. Around midnight on July 31, 1999, the Humboldt Police Department in Humboldt, Tennessee received a telephone call from a Lillian Smith concerning a man in the street who appeared to be intoxicated. Officer Mark Reid took the call and dispatched officers to the scene. As they were en route to answer the call, Smith called the police department a second time and informed Reid that the man was trying to get into the house. Reid understood the woman's statement to mean that a man was attempting to enter *her* house and instructed the officers to "rush it up." The plaintiff, Keith Davenport, alleges, however, that the officers, instead of responding to Smith's home at 806 North 18th Street, went to his house located at 805 North 18th Street. When the police arrived at the 805 North 18th Street address, defendants Kirkwood and Wright approached the front door. According to the defendants, Kirkwood pounded on the door and identified himself as a police officer. It is undisputed that plaintiff did not hear the identification. Plaintiff, a white male, opened the door holding a switchblade knife. Upon observing the weapon, one of the officers grabbed Davenport's right hand. Defendants maintain that plaintiff then grasped the officer's hand whereupon another officer seized Davenport's other hand. These actions propelled the officers into the living room of the residence. Plaintiff was backed up to the couch, where he dropped to his knees and was handcuffed. Davenport, however, describes the scene differently. He alleges that he carried the knife in self-defense. When he opened the door, he was tackled, fell to his knees, and was forced face down onto the couch, where he was handcuffed. It is not disputed that plaintiff suffered no injuries as a result of the incident with the exception of red marks from the handcuffs and received no medical treatment. The parties are at odds concerning the exact timing of the encounter. Plaintiff contends that the officers began banging on his door at 11:45

p.m. Defendants claim that the initial call from Smith was received at 11:50 p.m. with officers arriving on the scene at approximately 11:55 and reporting that Davenport was in custody one minute later. According to the affidavit of Kirkwood, when the officers realized that there had been a misunderstanding concerning the nature of the call, they removed the handcuffs, apologized to Davenport, and left the residence.

### PLAINTIFF'S CLAIMS

Plaintiff has initiated this action, pursuant to 42 U.S.C. § 1983, against Ray Simmons, individually and as Chief of Police for the City of Humboldt (the "City"); Allen Barker, individually and as mayor of the City; the Board of Alderman of the City; and officers Dennis Wright, Jimmy Arnold, Jim Kirkwood, Jim Thurbush, and James Avery, individually and as officers of the Humboldt Police Department, for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[1] Plaintiff has also asserted a claim of negligence. Davenport seeks compensatory and punitive damages from all defendants. In the instant motion, defendants request summary judgment on the following grounds: (1) entry into plaintiff's home did not constitute a violation of the Fourth Amendment; (2) sufficient evidence does not exist to support a finding of excessive force; (3) plaintiff has failed to state a claim of violation of his Eighth Amendment rights; (4) plaintiff cannot satisfy the elements of a claim under the Equal Protection Clause; (5) defendants' actions did not violate plaintiff's right to receive medical treatment; (6) defendant Simmons is not liable in his individual capacity; (7) plaintiff has not shown a policy or custom of the City that caused the alleged constitutional violation; (8) plaintiff has not demonstrated a violation of his constitutional rights based on hiring decisions; (9) the City is not liable for failure to train; (10) defendant City is not liable for punitive damages; and (11) plaintiff has failed to establish a claim of negligence. The court will address defendants' contentions seriatim.

### CONTENTIONS OF THE PARTIES AND ANALYSIS

**A. Federal Claims.**

**1. § 1983 Generally.**

Title 42 U.S.C. § 1983 provides in pertinent part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to establish liability under § 1983, the plaintiff must show that (1) he was deprived of a right secured by the United States Constitution or the laws of the United States and (2) he was subjected or caused to be subjected to the constitutional deprivation by a person acting under color of state law. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56

---

**1.** In an order entered October 17, 2000, Chief Judge James Todd dismissed plaintiff's claims against Barker and the Board of Aldermen in their entirety, as well as his claims against Wright, Arnold, Kirkwood, and Avery in their official capacities. In addition, it was determined subsequent to the filing of the complaint that defendant Thurbush was not employed by the City at the time of the incident.

L.Ed.2d 185 (1978)). Section 1983 does not provide a source of substantive rights "and does not provide redress for common law torts—the plaintiff must allege a violation of a federal right." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir.2000), *cert. denied*, 531 U.S. 1072, 121 S.Ct. 762, 148 L.Ed.2d 664 (2001).

2. *Fourth Amendment.*

▆▆▆ Plaintiff contends that the actions of the defendant officers violated his Fourth Amendment rights. The Fourth Amendment, which applies to the states pursuant to incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. These protections apply equally to civil and criminal cases. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir.1998). The Supreme Court has held that "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate. Although not all actions by police officers are governed by the Fourth Amendment, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Berg*, 219 F.3d at 268–69 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842–43, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)) (internal citations omitted); *see also Alexander v. Beale Street Blues Co., Inc.*, 108 F.Supp.2d 934, 940–41 (W.D.Tenn.1999). Therefore, the court will limit its review of Davenport's seizure to his Fourth Amendment claim. *See Berg*, 219 F.3d at 269. Plaintiff's claims arising from the alleged unreasonable seizure under the Fourteenth Amendment are stricken as immaterial.[2] In analyzing plaintiff's allegations that de-

fendants violated his rights under the Fourth Amendment, the court must first determine whether he was seized for purposes of the amendment. If so, the court then decides whether that seizure violated the Fourth Amendment's prohibition against unreasonable seizure. *See id.* In the instant case, it is not disputed that Davenport was seized. Rather, defendants maintain in their motion that seizure of the plaintiff was not unreasonable.

(a) *Exigent Circumstances.*

▆▆▆ "To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home." *Payton v. New York*, 445 U.S. 573, 588–89, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980) (citations omitted). Although the Fourth Amendment provides protection in a variety of venues, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home ..." *Id.* at 589, 100 S.Ct. at 1381–82. The Fourth Amendment "has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. at 1382; *see also Ingram v. City of Columbus*, 185 F.3d 579, 586–87 (6th Cir.1999). The Sixth Circuit has found exigent circumstances excusing the warrant requirement for entry into a home in the following situations: (1) hot pursuit of a fleeing felon; (2) where destruction of evidence is imminent; (3) a need to prevent the escape of a suspect; and (4) a risk of danger to officers or others. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir.1996). The term "exigent circumstances" "denotes the existence of real immediate and serious

---

**2.** Rule 12 of the Federal Rules of Civil Procedure permits the court on its own initiative at any time to strike immaterial matter. *See*

Fed.R.Civ.P. 12(f); *Alexander*, 108 F.Supp.2d at 940.

consequences that would certainly occur were a police officer to postpone action to get a warrant." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir.1994) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984)), *reh'g and suggestion for reh'g en banc denied* (Jul. 18, 1994) (internal quotation marks omitted). The court has further instructed that "in a civil damage suit, whether exigent circumstances existed to excuse a warrantless arrest is a question for the jury provided that, given the evidence on the matter, there is room for a difference of opinion." *Ingram*, 185 F.3d at 587 (quoting *O'Brien*, 23 F.3d at 998). On the other hand, "where the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law." *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).

█ Defendants maintain that exigent circumstances existed in this case based on their belief that there was someone in the house—the female caller who reported the intoxicated man—who was in need of assistance. In his affidavit, Mark Reid, who was assisting the dispatcher at the time of the incident, stated that he received a call from Ms. Smith concerning an intoxicated man causing a disturbance at 805 North 18th Street and dispatched a unit to that address. Shortly thereafter, he received a second call from Ms. Smith that the man was trying to get into the house. Believing that the man in the street was attempting to enter Smith's home, he instructed the officers en route to "rush it up." He did not indicate in his affidavit that he passed on to them the reason for his request for haste.

Defendant Kirkwood stated in his affidavit that he responded to a call at 805 North 18th Street involving an intoxicated man in the street. Prior to his arrival at the scene, he was advised by the dispatcher that the man was trying to get into the residence. Based on the circumstances known to him at the time, he averred, the officers were concerned that a female was in the house and in danger. In his deposition, Kirkwood testified that, when officers were dispatched to the address, the dispatcher stated that "there was a drunk male outside the house trying to get into the house." (Ex. B to Pl.'s Resp. to Defs.' Mot. for Summ. J., Dep. of Jim Kirkwood at p. 29.) He understood the house referred to by the dispatcher to be the house from which the call for assistance originated. Kirkwood indicated that he did not recall to which address on 18th Street he was dispatched. Shortly before he arrived at the scene, testified Kirkwood, the dispatcher radioed him that he needed to hurry, as the male subject was inside the house. The officer recalled that when he and other officers arrived at the scene, he "tried to make contact with an individual at the residence." (*Id.* at 30.) After knocking on the door, officers came upon Davenport with a knife.

In the police report prepared by Kirkwood and attached as an exhibit to his deposition, the officer stated that officers were dispatched to 805 North 18th Street in connection with a complaint made by Ms. Smith, who resided at 806 North 18th Street. He related that, according to the complaint, a drunk man was trying to enter her house and that she was inside. A second call from the dispatcher was received indicating that the man was now inside the house. After entering the residence at 805 North 18th Street, Kirkwood stated in the report that officers looked for the lady who had made the call. Based on these facts and viewing the evidence in the light most favorable to the plaintiff, the court finds that a genuine issue of material fact exists as to the knowledge possessed

by the officers with respect to the location of Smith. The inference could reasonably be drawn from the facts presented, as viewed in Davenport's favor, that the officers were aware Smith was at 806 North 18th Street rather than 805 North 18th Street and, therefore, that exigent circumstances did not exist to enter plaintiff's residence at 805. Accordingly, summary judgment is not appropriate.

### (b) *Excessive Force*

 Nor is summary judgment proper as to the plaintiff's claims of excessive force. Excessive force claims are to be analyzed pursuant to the Fourth Amendment's "reasonableness" strictures. That is, the plaintiff must show that the defendant's actions were, under the circumstances, objectively unreasonable. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir.), *cert. denied*, 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In defining the boundaries of Fourth Amendment reasonableness, the Supreme Court has stated as follows:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake .... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight...
>
> ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them ...

*Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) (internal citations and quotations omitted).

In his deposition, Kirkwood stated that he knocked on the door several times. At some point, a man came to the door and asked who it was. The officer identified himself as a policeman and instructed the man to open the door. The individual complied. The open door revealed Davenport standing in the doorway with an open switchblade knife. Kirkwood recalled that he told the plaintiff to drop the knife. Davenport backed into the living room and placed the weapon on the coffee table. The officers entered the house as well. Kirkwood testified that, when the plaintiff had moved away from where he left the knife, the officers turned him around, placed him face down on the couch, and handcuffed him for their safety. Davenport was then sat upright on the couch while officers searched the house. The plaintiff paints a somewhat more violent picture of the events. He stated in his deposition that, when he heard the knock-

ing on the door, he picked up ·from a nearby table a knife that he had recently purchased and had been admiring and approached the door. He was somewhat concerned because his porch light was not operating and the person or persons outside knocked loudly on the door instead of pressing the doorbell, which was next to the doorknob. He held the knife behind his leg and cracked the door open slightly to see who was outside. He heard someone yell "knife!" and someone grabbed at his hands. As the struggle that ensued proceeded into his living room, he realized the individuals were police officers. He was immediately tackled by two of them, thrown face down on his couch with his knees on the floor, handcuffed, and told to shut up. He was forced to remain in that position while the officers searched the house. The court finds that the facts surrounding the use of excessive force are in dispute and a rational factfinder could draw more than one inference from the parties' differing versions of the facts. Therefore, the court cannot conclude as a matter of law that the use of force was reasonable under the Fourth Amendment. Accordingly, the defendants' motion for summary judgment on the excessive force claim is DENIED.

### 3. *Eighth Amendment.*

▮▮▮▮ Davenport alleged in his complaint that defendants' actions constituted cruel and unusual punishment in violation of his rights under the Eighth Amendment. As defendants have correctly pointed out in their motion, however, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *See Bass v. Robinson,* 167 F.3d 1041, 1049 (6th Cir.1999) (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977)). Plaintiff has offered no argu-

ment in rebuttal of defendants' contentions in his response to the motion for summary judgment. It is undisputed that the plaintiff had not been "adjudicat[ed] of guilt" at the time the alleged excessive force was used. *See id.* Accordingly, the defendants' motion for summary judgment on the Eighth Amendment claims is hereby GRANTED.

### 4. *Fourteenth Amendment Equal Protection Clause.*

▮▮▮▮ Plaintiff alleged in his complaint that defendants violated his right to equal protection under the law pursuant to the Fourteenth Amendment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990) (citations omitted); *see also Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir. 2000). In order to survive a motion for summary judgment, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Bass,* 167 F.3d at 1050 (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)). ". . . [A] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Id.* (quoting *Huebschen v. Dep't of Health and Soc. Servs.,* 716 F.2d 1167, 1171 (7th Cir.1983)).

Plaintiff, a white male, made no allegation whatsoever in his complaint of invidious discrimination by the officers who entered his home, who were also white males, based upon his membership in a protected class. Moreover, he wholly

failed in his response to the instant motion to address defendants' argument in favor of summary judgment as to this claim. As plaintiff has merely alleged, at best, that he was treated unfairly as an individual by the defendants, his equal protection claim clearly fails and is hereby DISMISSED.

### 5. *Fourteenth Amendment Due Process Clause.*

 Plaintiff alleged in his complaint that defendants refused to provide medical attention and care and, through deliberate indifference, delayed medical attention for an unreasonable period of time. While the Eighth Amendment provides redress for deliberate indifference to the serious medical needs of prisoners, pretrial detainees are protected from such mistreatment through the Fourteenth Amendment's due process clause. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir.2001). The test for determining deliberate indifference has a subjective and an objective component. *Id.*

> The objective component requires a[ ] [detainee] to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in [*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)], "The [detainee] must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, a[ ] [detainee] must show that [officials] had a "sufficiently culpable state of mind."

*Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000)). In *Napier*, the Sixth Circuit adopted the approach of analyzing the seriousness of a deprivation by an examination of the effect of a delay in treatment. *Id.* The court held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994)) (alteration in original).

It is undisputed that, with the exception of red marks on his wrists from the handcuffs, plaintiff suffered no physical injuries as a result of the encounter with defendants and did not require medical treatment. Davenport testified in his deposition that he never sought treatment for injuries after the incident and there is no indication from his narrative of the events that he asked the officers on the scene for medical assistance. Indeed, plaintiff has offered no evidence whatsoever in support of his Fourteenth Amendment failure to provide medical assistance claim beyond the conclusory allegations set forth in his complaint. Accordingly, as plaintiff has clearly failed to make the showings required under *Farmer* and *Napier*, summary judgment is hereby GRANTED in favor of defendants.

### 6. *Individual Capacity Claims Against Defendant Simmons.*

 Supervisory liability under § 1983 attaches to an official in his individual capacity as a consequence of his own unconstitutional behavior. Liability "must be based on more than merely the right to control employees." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989) (quoting *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982)), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990).

> [A] failure of a supervisory official to supervise, control, or train the offending individual [employees] is not actionable absent a showing that the official either encouraged or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or know-

ingly acquiesced in the unconstitutional conduct of the offending [employees].

*Id.* (citing *Hays,* 668 F.2d at 874) (alteration in original); *see also Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993), *reh'g denied* (Jul. 1, 1993).

Plaintiff's allegations with respect to Simmons as set forth in his complaint are, without exception, specifically made against this defendant in his official capacity as police chief of Humboldt, Tennessee. He has made no showing that Simmons encouraged or participated in unconstitutional activities or that he implicitly authorized, approved or knowingly acquiesced in such conduct. Moreover, plaintiff has failed to offer any rebuttal whatsoever to defendants' motion to dismiss the individual claims against this defendant. Therefore, defendants' motion is hereby GRANTED and plaintiff's action against defendant Simmons in his individual capacity is DISMISSED.

### 7. *Liability of the City and Simmons in his Official Capacity.*

 Plaintiff alleged in his complaint that the City had a policy, custom, or practice of hiring unqualified persons, such as the individual defendants, as police officers; failing to provide adequate and proper training to police officers; and permitting the use of excessive force. The issue of Simmons's liability in his official capacity will be decided by the determination of the issue concerning the City's liability, as a § 1983 action against a municipal official in his official capacity is to be treated as an action against the municipality itself. *See Barber v. City of Salem, Ohio,* 953 F.2d 232, 237 (6th Cir.1992).

 Local governments are considered "persons" for purposes of § 1983. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000). The Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must]

identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County,' Okla. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2027, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); and *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). The finding of a policy or custom is the initial determination to be made by the trial court in a municipal liability claim. If the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to the existence of a policy or custom, then it is for the finder of fact to determine deliberate indifference. *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 509 (6th Cir.1996) (citing *Hicks,* 992 F.2d at 1456–57). The Sixth Circuit has instructed that

> [i]t is firmly established that a municipality ... cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. For liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort. Such a requirement ensures that a [municipality] is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [municipality]. The "policy" requirement is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials. Instead, the "policy" requirement is meant to distinguish those injuries for which the [municipality] is responsible under § 1983, from those injuries for which the [municipality] should not be held accountable.

*Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 441 (6th Cir.2000) (internal citations omitted). A local government may be found liable for policies set by its lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404, 117 S.Ct. at 1388 (citing *Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36).

> A "custom" for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe,* 103 F.3d at 507–08 (internal quotation marks and citations omitted). "[O]fficial policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur,* 475 U.S. at 480–81, 106 S.Ct. at 1299. A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie. *Culberson v. Doan,* 125 F.Supp.2d 252, 263–64 (S.D.Ohio 2000). The Supreme Court has consistently held that a municipality may not be held liable solely on the basis of *respondeat superior. See Brown,* 520 U.S. at 404, 117 S.Ct. at 1388; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122

L.Ed.2d 517 (1993); *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *City of Canton,* 489 U.S. at 392, 109 S.Ct. at 1206; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121–22, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988); *Pembaur,* 475 U.S. at 478, 106 S.Ct. at 1297–98.

 It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown,* 520 U.S. at 404, 117 S.Ct. at 1388 (emphasis in original). Thus, to recover, a plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the county's official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation.

*Napier v. Madison County, Ky.,* 238 F.3d 739, 743 (6th Cir.2001) (internal citations omitted). The showing required has been described by courts as a rigorous one. *See Black v. City of Memphis,* No. 98–6508, 2000 WL 687683, at *3 (6th Cir. May 19, 2000).

 "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *Canton,* 489 U.S. at

388, 109 S.Ct. at 1204; *see also Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir.), *cert. denied*, 528 U.S. 966, 120 S.Ct. 403, 145 L.Ed.2d 315 (1999). Municipal liability will lie only where "a failure to train reflects a 'deliberate' or 'conscious' choice." *Canton*, 489 U.S. at 389, 109 S.Ct. at 1205. The Court in *Canton* indicated two circumstances in which a finding of deliberate indifference in the failure to train police officers would be justified: (1) "failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction" and (2) failure "to act in response to repeated complaints of constitutional violations by its officers." *Brown*, 172 F.3d at 931 (citing *Canton*, 489 U.S. at 390, 109 S.Ct. 1197). With respect to hiring practices, an official's failure to adequately scrutinize the backgrounds of police applicants constitutes deliberate indifference only "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right ..." *Brown*, 520 U.S at 411, 117 S.Ct. at 1392.

In the instant case, defendants have submitted the affidavit of Simmons, who states that the City has a written policy prohibiting the use of excessive force, that City police officers receive training from the Tennessee Law Enforcement Academy along with 40 hours of annual in-service training, and that he was unaware of any incidents involving the alleged use of excessive force by the City's officers. The bare allegations set forth in plaintiff's complaint with respect to the municipal liability are wholly unsupported by affidavits or evidence in the record. As the Court stated in *Celotex*,

> a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is

entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (internal quotations omitted); *see also Culver v. Town of Torrington, Wyo.*, 930 F.2d 1456, 1459 (10th Cir.1991). Accordingly, as plaintiff has failed to offer any evidence whatsoever upon which a reasonable factfinder could find that the City maintained some policy or custom permitting the constitutional violation complained of, the defendants' motion for summary judgment as to all claims against the City and Simmons in his official capacity is hereby GRANTED. As a consequence, the court need not consider whether an aware of punitive damages is permissible as to the City.

### B. *Negligence Claims.*

■ Finally, defendants seek dismissal of plaintiff's claims of negligence, whether made pursuant to federal or state law. A review of the complaint reveals that plaintiff averred that his claims were brought pursuant to § 1983 with no mention whatsoever of state common law. The negligence allegations contained in the complaint were made solely in reference to plaintiff's federal civil rights claims. In his response, the plaintiff argues only in support of a federal negligence claim. Thus, it appears that plaintiff has asserted only a negligence claim under federal law, which is not actionable in itself absent a constitutional violation. *See Lewellen v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 34 F.3d 345, 349 (6th Cir.1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995). Plaintiff's negligence claim under § 1983 is therefore DISMISSED. As it appears that the plaintiff is not pursuing a negligence claim under state law, defendants'

motion to dismiss same is DENIED as moot.

### CONCLUSION

In sum, defendants' motion for summary judgment as to plaintiff's Fourth Amendment claims is DENIED and the motion for summary judgment as to plaintiff's claims under the Eighth and Fourteenth amendments is GRANTED. In addition, plaintiff's claims against the City and defendant Simmons, in his individual and official capacities, are DISMISSED. Further, plaintiff's separate claims of negligence under federal law are DISMISSED. Finally, defendants' motion for summary judgment as to plaintiff's claim of negligence under Tennessee law is DENIED as moot.