**Brian K. FERGUSON, Sr., etc., et al., Plaintiffs,**

v.

**Dennis LEITER, Fostoria Police Department, et al., Defendants.**

**No. 3:00CV7778.**

United States District Court, N.D. Ohio, Western Division.

Sept. 18, 2002.

---

John B. Fisher, Borgstahl, Zychowicz & Fisher, Toledo, OH, for Plaintiffs.

Teresa L. Grigsby, John P. Hayward, Joan C. Szuberla, Spengler Nathanson, Toledo, OH, Alicia Wolph Roshong, Fostoria, OH, for Defendants.

### MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court is the Motion for Summary Judgment (Doc. No. 16) filed by Defendants Dennis Leitter, Roger Wilson, and City of Fostoria. Based upon careful consideration of Defendants' motion, Plaintiffs' opposition, Defendants' reply, Plaintiffs' surreply, and Defendants' response, the Court will grant in part and deny in part Defendants' motion.

### I. BACKGROUND

On December 23, 1998, Plaintiff Brain Ferguson ("Ferguson") reported for his scheduled monthly meeting with parole officers Douglas Pummel ("Pummel") and Adam Heath ("Heath"). During the meeting, Ferguson was informed that his urine sample had tested positive for cocaine, which constituted a parole violation and required that Ferguson be placed under

arrest and returned to jail. According to Plaintiff, he tried to talk Pummel into not taking him to jail that day so that he could spend time with his family over the holidays and instead turn himself in after Christmas. Pummel allegedly became concerned about Ferguson's refusal to cooperate, so he sent Heath across the hall to request assistance from the Fostoria Police Department with Ferguson's arrest.

Upon hearing a dispatcher's request for assistance with Ferguson, Defendant Officer Dennis Leitter ("Leitter") reported to the jail visitation room where Ferguson's parole meeting was taking place. It is at this point that the parties' accounts diverge. Leitter testifies that Ferguson was in a highly agitated state, would not remain in a frisk position, and eventually made a fist, accompanied by a body movement that gave Leitter cause to believe that Ferguson intended to fight his way out of the room. Ferguson asserts that he was compliant, and that the motion which was misinterpreted by Leitter as an act of aggression, was actually Ferguson yanking his hand away during a painful handcuffing procedure. Regardless of the reasons why Ferguson made whatever movements he actually made, the parties do not dispute that Leitter placed Ferguson in some type of neckhold; however, the parties do dispute the precise type of hold that Leitter used. In a rapid sequence of events, after the neckhold was applied, Leitter and Ferguson fell to the ground, whereupon Leitter's knee ended up briefly in Ferguson's back.

Ferguson now complains of a back injury and seeks to recover under 42 U.S.C. § 1983[1] for alleged violations of his Fourth and Fourteenth Amendment rights. The complaint alleges excessive force, failure to supervise, and failure to train, as well as a loss of consortium claim asserted on behalf of Ferguson's wife and children.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

---

1. The statute provides in relevant part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 42 U.S.C. § 1983.

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### B. Fourteenth Amendment

As a preliminary matter, the Court notes that Ferguson alleges violations of his Fourth and Fourteenth Amendment rights. However, the Supreme Court has instructed " 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir.2001) (quoting *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "[T]he Fourth Amendment 'objective reasonableness' analysis should be used in excessive force cases involving searches and seizures." *Id.* Ferguson asserts his claims that arise in the context of an arrest, which clearly falls within the ambit of the Fourth Amendment's "search and seizure" jurisprudence. Therefore, Ferguson's claims are properly analyzed under the Fourth, and not the Fourteenth Amendment.[2] The Court conducts its analysis accordingly.

---

2. As explained by the Sixth Circuit:

A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the "objective reasonableness" test of *Graham,* in which excessive force can be found if the officer's actions, in light of the totality of the circumstances, were not objectively reasonable. The substantive due process rights of the Fourteenth Amendment protect citizens from the arbitrary exercise of governmental power. The test ap-

## B. Qualified Immunity

 Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability ... [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original).

 In analyzing qualified immunity claims, a court must determine (1) whether the plaintiff has asserted a violation of a known civil constitutional right, and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known he was violating plaintiff's constitutional rights. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir.1993). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Once a qualified immunity defense is raised, the "plaintiff is obliged to present facts which if true would constitute a violation of clearly established law." *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir. 1987) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d

411 (1985)). While the ultimate burden of proof is upon the plaintiff to show that the defendant is not entitled to qualified immunity, the defendant "bear[s] the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights,* 955 F.2d 1092 (6th Cir.1992).

Qualified immunity provides a broad range of protection, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). It operates "to protect officers from the sometimes 'hazy borders between excessive and acceptable force' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier,* 533 U.S. at 206, 121 S.Ct. 2151 (internal citation omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

With this legal framework in mind, the Court now turns to the parties' contentions.

## C. Count I—Excessive Force

Ferguson asserts his constitutional rights were violated when Officer Leitter used a neckhold, characterized by Plaintiffs as a chokehold, on Ferguson to subdue him during an arrest. Ferguson asserts that the chokehold constitutes excessive force and seeks to recover damages for this alleged constitutional violation under 42 U.S.C. § 1983. De-

plied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct "shocks the conscience."

*Darrah v. City of Oak Park,* 255 F.3d 301, 306 (6th Cir.2001) (internal citation omitted).

fendant Leitter asserts that the force used was reasonable under the circumstances and that he is entitled to qualified immunity for his actions.

■ The United States Supreme Court recently clarified the qualified immunity inquiry in the context of an excessive force case in *Saucier.* An excessive force claim is to be determined under an objective reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The focus of a qualified immunity analysis, while similar, "has a further dimension":

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier,* 533 U.S. at 205, 121 S.Ct. 2151.

The Court recognized that while it is ostensibly "inconsistent to conclude that an officer who acted unreasonably under the constitutional standard nevertheless was entitled to immunity because he reasonably acted unreasonably," qualified immunity nonetheless protects officers who "perform their duties with considerable uncertainty as to whether particular [conduct] ... comports with the Fourth Amendment." *Id.* at 203, 121 S.Ct. 2151 (internal quotation and citation omitted). The issue in the case *sub judice* mirrors the one presented in *Saucier,* that is, whether the force used violated a clearly established Fourth Amendment protection so that Leitter is not entitled to immunity.

### 1. Underlying constitutional violation

Under the first prong of the qualified immunity analysis, the Court must determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201, 121 S.Ct. 2151 (citing *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Stated differently, the question in the instant action is whether the Plaintiff has stated a valid claim of excessive force under the Fourth Amendment. This Court finds Plaintiff has stated such a claim.

■ The factors considered in assessing a constitutional excessive force claim include the particular facts and circumstances of each case, the severity of the crime, the threat posed by the suspect, and whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. The Supreme Court has instructed:

> " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' " violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and cir-

cumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396–97, 109 S.Ct. 1865 (internal citation omitted).

In the instant action, Plaintiff admittedly was challenging his parole officer's decision to take him into custody and was pleading with the officer to be permitted to turn himself in after the holidays. However, Plaintiff was not a fleeing felon. He was not being arrested for any type of violent crime, but rather was being taken into custody for drug use. Plaintiff, while admittedly a large man, was in a room outnumbered at least three to one when the neckhold occurred. Other than Leitter's assertion as to Plaintiff making a fist, a fact disputed by Plaintiff and not corroborated by any other officer, Plaintiff is not alleged to have engaged in any menacing physical or verbal conduct toward any of the officers. Leitter admits to having sporadically placed an open palm on Plaintiff's back to keep him positioned against the wall in a frisk position, but does not testify to any other methods of restraint attempted prior to using the neckhold.

Leitter testifies that in conjunction with making a fist, Plaintiff also simultaneously turned around. Leitter asserts that this body movement, coupled with Plaintiff's fist, gave Leitter the impression that Plaintiff might try to fight his way out of the room. However, in his deposition, Leitter also attributes the physical action to Ferguson turning to converse with his wife who was in the room at the time. Leitter asserts that Plaintiff was "agitated," but does not state that he was violent, or that he made any profane or disparaging remarks to the officers that would have indicated an intent to do violence or flee the room. Plaintiff admits to having pulled his hand away while being handcufffed, and asserts that it was at this point Officer Leitter placed him in the neckhold.

While some force may have been warranted to effect Plaintiff's arrest, it is not clear that the level of force used by Leitter was appropriate, given the circumstances. Viewing the facts in a light most favorable to Plaintiff, the Court determines that the facts alleged by Plaintiff, if true, might give rise to an excessive force claim. This determination, however, does not end the Court's inquiry, because the Court must also determine whether Leitter's conduct violated a right that was clearly established at the time of the incident.

### 2. *Reasonableness of Officer Leitter's actions*

In determining whether a right is clearly established, that right must first be defined at the appropriate level of specificity. *See Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). In the instant action, the appropriate inquiry is an objective inquiry as to whether a reasonable officer could have believed that using a chokehold to subdue a person resisting arrest, under the particular circumstances presented in this case, was lawful "in light of clearly established law and the information the officer[ ] possessed." *Id.*

■ As in *Wilson,* "the constitutional question presented by this case is by no means open and shut." *Id.* Ferguson indeed had a right to be free from excessive force during his arrest, but it is not obvious that the instant neckhold violates the Fourth Amendment. The neckhold in the instant action, while alleged to have obstructed Ferguson's breathing, did not cause him to lose consciousness or pass out, did not cause damage to his trachea or

larynx, and was administered for only a very brief period of time. It was administered in the context of Ferguson, who is a large man who had tested positive for cocaine use, who had a history of resisting arrest, resisting arrest in a small room with dangerous conditions, such as unsecured chairs and a sharp ledge, and civilians nearby.

Plaintiffs argue that summary judgment is inappropriate because there is contradictory testimony about whether Ferguson made a fist, and if Ferguson did not do so, then there was no basis for Leitter to reasonably believe that he would be struck. This argument does not address, however, Leitter's assertion that he not only thought that he would be struck, but that Plaintiff was going to attempt to fight his way out of the room. Moreover, regardless of whether the officer believed that he thought he was going to be struck, Plaintiffs have not presented relevant, controlling authority from this jurisdiction, or a consensus from other jurisdictions, regarding the constitutionality of neckholds.

Instead of providing relevant legal authority, Plaintiffs instead engage in "an examination of the policies of law enforcement agencies nationwide," Pls.' Opp. at 20, to determine the reasonableness of Leitter's actions. Based upon the results of studies conducted by, *inter alia,* the Department of Justice and the National Institute of Justice on certain trends in law enforcement, Plaintiffs reason that an "almost unanimous majority of law enforcement agencies have restricted the use of neck restraints to deadly force situations." Pls. Opp. at 22. Plaintiffs also submit a work prepared by Samuel Faulkner, an employee of the Ohio Peace Officer Training Academy. Mr. Faulkner's publication provides statistics based on surveys of Ohio law enforcement officers, on, among other topics, the use of neck restraints.

With respect to these documents, Plaintiffs do not establish that the results of the studies can be extrapolated as they have suggested. Moreover, even if such evidence were properly considered by this Court, at least one of the reports relied upon was not issued until 1999, after Ferguson's arrest took place. Furthermore, the various studies presented by Plaintiffs do not establish that as of 1998, either the Supreme Court or any other court had ruled so as to clearly establish the unlawfulness of Leitter's actions. The studies, while interesting, and perhaps more relevant to Plaintiff's failure to train claim, do not adequately establish that as of 1998; there existed clear legal authority as to the neck hold issue.

Plaintiffs nonetheless assert that "[p]olice use of neck restraints has been controversial and generally discouraged except in situations where deadly force is appropriate since at least 1983." Pls.' Opp. at 9. Yet as in *Graham,* Plaintiffs in the instant action "have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson,* 526 U.S. at 617, 119 S.Ct. 1692.

Plaintiffs do cite to *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), and note that the dissent in *Lyons* discussed what it referred to as an "undisputed" and "high and unpredictable risk of serious injury or death." 461 U.S. at 117, 103 S.Ct. 1660. However, such a statement from the dissenting justices in a single case does not clearly establish the unconstitutionality of Leitter's actions in the instant action. Moreover, in *Lyons* that plaintiff allegedly was subjected to a chokehold until he blacked out.

When he regained consciousness, "he was lying face down on the ground, choking, gasping for air, spitting up blood," and had urinated and defecated. *Lyons,* 461 U.S. at 115, 103 S.Ct. 1660 (Marshall, J., dissenting). Nothing close to such allegations are made in the instant action.

Under the circumstances alleged in the instant action, despite the physical injury to Plaintiff, the Court cannot conclude that Leitter acted contrary to clearly established standards. On this basis, Leitter is entitled to qualified immunity and summary judgment.

### D. Count II—Failure to Intervene

Count II is alleged against Defendant Captain Roger Wilson for failing to intervene to prevent Officer Leitter's conduct. In their opposition Plaintiffs state that they "abandon their claim against Captain Wilson as it relates to his alleged failure to intervene" because they have learned "Officer Leitter's questioned actions were initiated prior to Captain Wilson's arrival and ability to assume control of the situation." Pls.' Opp. at 27. Accordingly, Count II and Captain Wilson will be dismissed from this action.

### E. Count III—Claims Against Municipality for Failure to Train

Count III alleges "the City of Fostoria, through its police department, failed to adequately train Officer Leiter [sic] and that said lack of training constituted a policy or custom of that department which showed a deliberate indifference to the rights of persons with whom its police officers reasonably should have been expected to come into contact." Compl. ¶ 14.

 To maintain a failure to train claim Plaintiffs must establish not only that a governmental policy or custom caused the alleged injury, *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), but also

that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *Id.* at 385, 109 S.Ct. 1197. "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 904 (6th Cir.1998) (citing *Canton,* 489 U.S. at 390–91, 109 S.Ct. 1197).

> Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice Brennan's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also *Oklahoma City v. Tuttle,* 471 U.S. at 823, 105 S.Ct. 2427 (opinion of Rehnquist, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Canton,* 489 U.S. at 389, 109 S.Ct. 1197.

 " 'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregard a known or obvious consequence of his action." *Bd.*

*of County Comm'rs v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407, 117 S.Ct. 1382.

■ In the instant action, Defendants have come forward with evidence that Officer Leitter was trained with respect to various restraint techniques, including neckholds. Fostoria does not have the burden of demonstrating that its training was adequate; rather, Plaintiffs have the burden of demonstrating that the Fostoria police officer's training was inadequate. Plaintiffs do not dispute or refute Leitter's testimony regarding his training as to various restraint techniques, including neckholds, yet Plaintiffs provide no evidence suggesting that Leitter or any other officer's training was so deficient as to constitute deliberate indifference on the part of the city. Nor do Plaintiffs provide any evidence that as of 1998, the city was on notice that the Fostoria officers' training at that time was constitutionally deficient. There is no evidence in the record of any incidents prior to 1998 regarding neckholds, and thus it cannot be said that as of 1998, Fostoria knew or should have known of a problem regarding its officers' training yet failed to implement corrective measures.

Plaintiffs remarkably make no arguments and present no evidence as to the training actually received by Leitter and the other Fostoria police officers. Plaintiffs instead rely upon statements from Captain Wilson that the police department did not have a separate policy in effect that expressly limited the use of neckholds. Based upon this assertion, Plaintiffs leap to the conclusion that the Fostoria police officers, and Leitter in particular, were inadequately trained. However, this argument overlooks the fact that the training that Leitter and the other officers received might in and of itself have been sufficient to address the neckhold issue, thus obviating the need for a separate policy statement limiting the use of such restraint devices.

Plaintiffs also infer from Captain Wilson's comments that the use of neckholds was left up to an officer's individual discretion, which the Plaintiffs apparently would have the Court equate with deliberate indifference. Plaintiffs submit Captain Wilson knew his officers were using neck restraints, and thus reason that the city tolerated a custom resulting in the violation of Ferguson's constitutional rights. As to these arguments, the Court finds the following instructive:

> We concluded in *Canton* that an "inadequate training" claim could be the basis for § 1983 liability in "limited circumstances." *Id.* at 387, 109 S.Ct. 1197. We spoke, however, of a deficient training "program," necessarily intended to apply over time to multiple employees. *Id.,* at 390, 109 S.Ct. 1197. Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case. If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Id.,* at 390, n. 10, 109 S.Ct. 1197 ("It could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need"); *id.,* at 397, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part)

("Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations ..."). In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury. See *id.*, at 390–391, 109 S.Ct. 1197.

*Brown,* 520 U.S. at 407–08, 117 S.Ct. 1382.

Plaintiffs assert that command officers of the Fostoria police department "knew 'to a moral certainty' that their police officers would from time-to-time become involved in situations where they would have to arrest suspects." Pls.' Opp. at 24. Plaintiffs further argue that command officers knew that people do not always willingly submit to arrest and that some measure of force might be required in certain instances. Plaintiffs thus reason that because allegedly 95% or more of sister departments have policies limiting the use of neck restraints, "it is likewise a 'moral certainty' that Fostoria was deliberately indifferent to the injuries likely to result from its failure to act in instructing its officers under what circumstances it was permissible to use neck restraints." Pls. Opp. at 25. Plaintiffs further complain that even after Ferguson's arrest, Fostoria did not enact any policy regarding neckholds.

Plaintiffs do not demonstrate, however, "continued adherence to an approach that [Fostoria knew or should have know] has failed to prevent tortious conduct by employees." *Brown,* 520 U.S. at 407, 117 S.Ct. 1382. Nor do Plaintiffs demonstrate that the Fostoria police officers, in exercising their discretion regarding neckholds, "so often violate constitutional rights that

the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, [were] deliberately indifferent to the need." *Id.* (quotation omitted). Plaintiffs present no authority suggesting that Fostoria can be held liable for Ferguson's injuries sustained in 1998, on the basis that the city failed to implement a neckhold policy *after* the alleged injuries occurred. Furthermore, Plaintiffs do not provide any rationale as to why any knowledge possessed by Captain Wilson or other command officers can be imputed to the city and serve as a basis for municipal liability and do not even attempt to establish that Captain Wilson or any other command officers had final decision making authority for the City of Fostoria.

For the foregoing reasons, Fostoria is not subject to liability under § 1983 and is entitled to summary judgment.

### F. Count IV—Loss of Consortium

Count IV states a loss of consortium claim on behalf of Mrs. Ferguson and the Ferguson children. Ohio law recognizes claims for loss of consortium. *See Clouston v. Remlinger Oldsmobile Cadillac, Inc.,* 22 Ohio St.2d 65, 258 N.E.2d 230 (Ohio 1970). However, these claims are derivative of, and thus often tied to the success of, the underlying claims. *See Urban v. Goodyear Tire & Rubber Co.,* 2000 WL 1800679, at *6 (Ohio App. Dec. 7, 2000) (explaining that "liability elements of a loss of consortium claim are proven when the underlying tort is proven"); *but see Bowen v. Kil–Kare, Inc.,* 585 N.E.2d 384, 391, 63 Ohio St.3d 84 (Ohio 1992) (noting that "a wife's loss of consortium claim is not necessarily defeated by a valid defense to her husband's claim against the tortfeasor").

▆ Defendants assert that all other claims are subject to summary judgment and thus the derivative loss of consortium claim cannot survive. However, in the

instant action, the Court did not find that Plaintiffs had not stated an excessive force claim, but rather that Officer Leitter was nonetheless entitled to a qualified immunity defense as to such claim. The Ohio Supreme Court has determined that a tortfeasor's defense to liability does not necessarily preclude a loss of consortium claim. *See Bowen,* 585 N.E.2d at 391. Accordingly, Plaintiffs might have a viable loss of consortium claim. Nonetheless, given that the instant action is predicated upon the Court's federal question jurisdiction and all federal claims have been disposed of, the Court declines to exercise jurisdiction over the sole remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise that jurisdiction when it has dismissed all other claims over which it has original jurisdiction). This Count will be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 16) will be granted as to Counts I and III. Summary judgment is denied on Counts II and IV; however, these counts will be dismissed.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants' motion for summary judgment (Doc. No. 16) is granted as to Counts I and III.

IT IS FURTHER ORDERED that Counts II and IV are dismissed. Case closed.