**Hayden Vincent PHEBUS, Plaintiff,**

v.

**CITY OF MEMPHIS, et al., Defendants.**

**No. 03–2820B.**

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 5, 2004.

Robert H. Love, Esq., Law Office of Robert H. Love, Memphis, TN, for Plaintiff.

Robert D. Meyers, Kiesewetter Wise Kaplan Schimmer & Prather, PLC, Memphis, TN, for Defendants.

Diane Vescovo, Memphis, TN, pro se.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF DEFENDANT CITY OF MEMPHIS AND GRANTING MOTION TO DISMISS OF DEFENDANT JOSEPH BYERS

BREEN, District Judge.

## INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was brought by the Plaintiff, Hayden Vincent Phebus, on November 5, 2003 against the City of Memphis (the "City"); the Memphis, Tennessee Police Department ("MPD"); and W.W. Herenton, Walter Crews, Officer Joseph Byers, Officer M. Warren, John Does I–X and Jack Does I–X, individually and in their official capacities. The Plaintiff has alleged pursuant to 42 U.S.C. § 1983 violations of the Fourth, Eighth and Fourteenth Amendments; conspiracy under 42 U.S.C. §§ 1985(3) and 1986; and violations of various laws of the state of Tennessee.

On January 30, 2004, the Defendant Joseph Byers moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Fed.R.Civ.P. 56.

A similar motion was filed on behalf of the City on February 26, 2004. In an order entered June 23, 2004, the magistrate judge granted the Plaintiff, who is represented by counsel, an additional 45 days in which to respond to the pending dispositive motions. When no response was filed within the time period set by the magistrate judge, this Court, in an order entered August 18, 2004, directed the Plaintiff to show cause within fifteen (15) days why the motions should not be granted. The deadline for response was extended to September 24, 2004 at the request of Plaintiff's counsel. In granting the extension, the Court admonished Plaintiff's counsel that no further extensions would be permitted. On September 24, the Plaintiff filed a response only to the municipal Defendant's motion to dismiss, never making reference to the motion filed by Byers. As the time for filing responses has expired and no other extensions have or will be permitted, the Defendants' motions are now ripe for disposition.

## STANDARD OF REVIEW

The Defendants have based their motions to dismiss on Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits the dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). The Rule requires the court to "construe the complaint in the light most favorable to the plaintiff[ ], accept all of the complaint's factual allegations as true, and determine whether the plaintiff[ ] undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based upon whether 'the claimants entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *Osborne v. Bank*

*of Am., Nat'l Ass'n,* 234 F.Supp.2d 804, 807 (M.D.Tenn.2002) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

The Rule further provides that, "[i]f, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ..." Fed.R.Civ.P. 12(b). As Defendant Byers has submitted affidavits and other documentary evidence in support of his motion, the Court will analyze the motion of the individual Defendant under Rule 56, which states in pertinent part that a

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## FACTS

The Plaintiff has alleged in his Complaint as follows:

13[a]. On November 10, 2002, at approximately 8:30 p.m., a disturbance call was made to 5039 Verosa, Memphis, Tennessee.

13[b]. Mrs. Gretchen Phebus, wife of the Plaintiff, Hayden Vincent Phebus, had been contacted by her ex-husband, William Sanders, who was using a laser spot light on Plaintiff's family and he had threatened to do bodily harm to the Plaintiff, Hayden Vincent Phebus and his wife and her two (2) sons who lived with the Plaintiff.

13[c]. Mr. Sanders had directed the laser spot light into the Plaintiff's home as well as threatening the Plaintiff's family.

13[d]. Plaintiff had secured his own weapon for the protection of his family.

13[e]. Plaintiff explained this to Defendant Byers and was ordered by Defendant Byers to accompany him in his search for Mr. Sanders. Plaintiff was accompanied by his neighbor who was a witness to this encounter.

13[f]. Plaintiff and his neighbor accompanied Defendant Byers in the search as they had been instructed.

13[g]. Defendant Byers, for no reason or excuse, turned on Plaintiff and

without cause or explanation, ordered Plaintiff to drop his pistol.

13[h]. The Plaintiff turned his head into the direction of the Defendant Byers when, without cause or reason, Byers suddenly fired his pistol toward the Plaintiff, striking him in the left arm, his chest area, and hip area inflicting severe gunshot wounds.

13[i]. Plaintiff's neighbor attempted to assist him at the scene, but was not permitted to do so by the Defendant Byers.

13[j]. Plaintiff's neighbor attempted to explain to Defendant Byers that he had shot the wrong man. While he was trying to explain the error, he was ordered away from the scene while Defendant Byers and two other police officers handcuffed Mr. Phebus, dragging him by the handcuffs while all three officers continued to stomp and kick Plaintiff despite the bleeding from the gunshot wounds and severe pain from the kicking and stomping. Plaintiff was informed that Officer Warren assisted Defendant Byers in the beating, kicking and stomping.

13[k]. Plaintiff eventually was transported to the hospital (MED) where he was listed as critical and underwent several hours of surgery for his gunshot wounds inflicted by the Defendant.

(Compl.¶ 13.)

### ANALYSIS OF THE PARTIES' CLAIMS

As an initial matter, the Court finds dismissal of MPD as a separate Defendant warranted in light of the Sixth Circuit's decision in *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994), in which the court found that a municipal police department is not an entity subject to suit, but that, rather, the proper defendant is the municipality itself. *See Shorter v. Giles County Police Dep't*, 73 Fed.Appx. 780, 2003 WL 21397847, at *1 (6th Cir.2003); *Dean v. Landrum*, 221 F.3d 1334, 2000 WL 922862, at *1 (6th Cir.2000). Dismissal is also appropriate as to the individual Defendants in their official capacities, as "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews*, 35 F.3d at 1049 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68, 109 S.Ct. 2304, 2310–11, 105 L.Ed.2d 45 (1989)). The Court may now turn to the dispositive motions with respect to the Plaintiff's claims against the City and the Defendant Byers in his individual capacity.

### I. Plaintiff's Claims Involving the City.

#### A. 42 U.S.C. §§ 1983 and 1988.

##### 1. Generally.

Phebus has alleged that the City violated his rights under the Fourth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1988.[1] Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right

---

**1.** Section 1988 permits an award of attorney's fees to a prevailing party in a civil rights action. *See Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446–47 (6th Cir.2000). Although the Plaintiff has not elaborated on his § 1988 claim, the Court assumes the Plaintiff in making allegations under the statute merely intended to reserve his right to seek attorney's fees should he succeed on the merits. *See Board of Tr. Sabis Int'l Sch. v. Montgomery*, 205 F.Supp.2d 835, 853 n. 12 (S.D.Ohio 2002). Accordingly, at this juncture, the Court DENIES the City's motion to dismiss Plaintiff's claim under § 1988.

secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." *Humes v. Gilless,* 154 F.Supp.2d 1353, 1357 (W.D.Tenn.2001).

## 2. *Municipal Liability.*

■■■■ Local governments are considered "persons" for purposes of § 1983. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000). This does not mean, however, that municipalities are "liable for every misdeed of their employees and agents." *Alkire v. Irving,* 330 F.3d 802, 814–15 (6th Cir.2003) (citation omitted). Municipal liability under § 1983 attaches only "where the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury' complained of." *Graham v. County of Washtenaw,* 358 F.3d 377, 382 (6th Cir. 2004) (quoting *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In a case alleging failure to train officers or to investigate, as has been alleged here, a plaintiff must also establish that the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *See Ferguson v. Leiter,* 220 F.Supp.2d 875, 884 (N.D.Ohio 2002) (quoting *Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *Humes,* 154 F.Supp.2d at 1363.

■■■ The Plaintiff avers that the City violated his constitutional rights by failing to train, discipline, monitor and evaluate officers in the use of force; refusing to adequately investigate citizen complaints of excessive force; exonerating officers accused of improper use of force; and instructing officers to make false statements with regard to such claims. Creation by the City of an atmosphere of tolerance for unconstitutional behavior, Phebus complains, evidences deliberate indifference to the rights of the City's inhabitants. Based on its review of the complaint, the Court finds that the Plaintiff has satisfied the requirements of *Monell* and its progeny in alleging municipal liability under § 1983 sufficient to survive a Rule 12(b)(6) motion to dismiss.

## 3. *Constitutional Violations.*

■■■ A § 1983 plaintiff, as the Court has previously noted, must establish the deprivation of a constitutional right. *Wittstock,* 330 F.3d at 902. In the instant motion, the City seeks dismissal of the Plaintiff's constitutional claims under the Eighth and Fourteenth Amendments.[2] The Eighth Amendment prohibits cruel and unusual punishment in connection with the use of excessive force during an arrest. *See Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999). It is not implicated, however, if the alleged misconduct occurs *prior* to the plaintiff's conviction. *Id.* at 1048–49. As the Supreme Court articulated in *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977), "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *See also Graham,* 358 F.3d at 382 n. 3 (Eighth Amendment has no application to pretrial detainees); *Bass,* 167 F.3d at 1048–49 (Eighth Amendment comes into play postconviction); *Davenport v. Simmons,* 192 F.Supp.2d 812, 821 (W.D.Tenn.2001) (same). It is undisputed Phebus had not been convicted prior to the alleged incident

**2.** The City does not request dismissal of the Plaintiff's Fourth Amendment claim.

in this case. Thus, he has no Eighth Amendment claim.

■ The Plaintiff's Fourteenth Amendment claim is also without merit. The Fourth Amendment, which applies to the states pursuant to incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. These protections apply equally to civil and criminal cases. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 598 (6th Cir.1998). The Supreme Court has held that "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate. Although not all actions by police officers are governed by the Fourth Amendment, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Berg v. County of Allegheny*, 219 F.3d 261, 268–69 (3d Cir. 2000), *cert. denied*, 531 U.S. 1072, 121 S.Ct. 762, 148 L.Ed.2d 664 (2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842–43, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)) (internal citations omitted); *see also Alexander v. Beale Street Blues Co., Inc.*, 108 F.Supp.2d 934, 940–41 (W.D.Tenn.1999). As there does not appear to be any dispute among the parties that the Fourth Amendment is applicable to this case, the Plaintiff's claims arising under the Fourteenth Amendment are DISMISSED.[3]

B. *42 U.S.C. §§ 1985(3) and 1986.*

■ Section 1985(3) provides that

[i]f two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such State ... the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person ..., or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1986 provides for an award of damages against any "person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed ..." 42 U.S.C. § 1986. Phebus asserts that the City, as well as individual Defendants Herenton and Crews, had knowledge of a conspiracy consisting of the alleged pattern of constitutional violations by the MPD and had the ability to prevent the conspiracy but failed to do so. He further contends that Defendants Herenton and Crews were aware that the MPD

---

**3.** The Plaintiff argues in his response that, while he concedes his excessive force claims should be analyzed under the Fourth Amendment, his allegations of false arrest, false imprisonment, denial of access to the courts and failure to provide medical attention may fall under the umbrella of the Fourteenth Amendment's protections. However, his complaint contains no such allegations, and a response to a motion to dismiss is not the proper venue for amending his complaint. Therefore, his contentions in this regard will not be addressed.

or its union advised its members to make false statements concerning incidents involving death or serious injury in order to avoid liability. These actions, he insists, were in violation of §§ 1985 and 1986.

In order to establish a violation of § 1985, a plaintiff must show that "1) the defendants conspired 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws'; and 2) the defendants committed acts that deprived the claimant 'of having and exercising any right or privilege of a citizen of the United States.'" *Bartell v. Lohiser,* 215 F.3d 550, 559 (6th Cir.2000) (quoting 42 U.S.C. § 1985(3)). The *Bartell* court found that " § 1985(3) only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Id.* at 560 (citing *Haverstick Enter., Inc. v. Financial Fed. Credit, Inc.,* 32 F.3d 989, 994 (6th Cir.1994); *Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir. 1980)) (internal quotation marks omitted). In doing so, the court recognized that "the Supreme Court has emphasized that § 1985(3) requires *inter alia* that a claimant establish 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* at 559–60 (citing *United Brotherhood of Carpenters and Joiners of Am. v. Scott,* 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). As the City has pointed out, Phebus has alleged no racial or class-based discrimination in support of his § 1985 claim. Nor has he addressed the City's assertions as to this claim in his response to the motion to dismiss. Thus, the Court finds dismissal appropriate. *See id.* at 560 (dismissal under Rule 12(b)(6) is warranted where the plaintiff fails to allege the defendant harbored any class-based discriminatory animus toward one attempting to exercise a fundamental right). Furthermore, "because [his] § 1986 claim is derivative and conditioned on establishing a § 1985 violation," the Plaintiff's § 1986 is also DISMISSED. *See id.*

## C. *Tennessee Governmental Tort Liability Act.*

The Plaintiff alleged in his complaint as follows:

The acts or omissions of the [individual] Defendants alleged herein were committed in the course and scope of their employment with the City . . .

The acts and omissions of the Defendants constitute negligence under the laws of the State of Tennessee.

Pursuant to the Tennessee Governmental Tort Liability Act, Defendant City of Memphis is liable for the negligent acts of its agents and/or employees acting within the course and scope of their positions.

(Compl. ¶¶ 33–35.) The City argues the Tennessee Governmental Tort Liability Act, codified at Tennessee Code Annotated §§ 29–20–101 *et seq.* (the "GTLA"), precludes suit against this Defendant. The statute "codifies the general common law rule that 'all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities,' subject to statutory exceptions in the Act's provisions." *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 79 (Tenn.2001) (citing Tenn.Code Ann. § 29–20–201(a)) (internal citations omitted). Under the GTLA, "a general waiver of immunity from suit for personal injury claims is provided . . . for injury proximately caused by a negligent act or omission of any employee within the scope of his employment, unless the injury arises out of one of several enumerated exceptions," including an

exception for intentional torts. *Id.* (internal quotation marks omitted).

In his response, the Plaintiff concedes the GTLA provides immunity to the City, suggesting only that the state statute "does not immunize the City of Memphis from liability under 42 U.S.C. § 1983." (Pl.'s Resp. to Defs.' City of Memphis, City of Memphis Police Dep't, W.W. Herenton and Walter Crews, Mot. to Dismiss at 13.) As the Plaintiff's statement appears to indicate abandonment of his tort claim against the City, the claim is hereby DISMISSED.

### D. *Punitive Damages.*

The Court now turns to the City's request for dismissal of the Plaintiff's punitive damages claim. Based on the Plaintiff's acknowledgment in his response that he does not seek punitive damages against this Defendant, the City's motion is GRANTED.

### II. *Claims Against Defendant Byers.*

At the outset, the Court notes, as it has previously herein, that the Plaintiff failed to respond to the individual Defendant's motion to dismiss or, in the alternative, for summary judgment despite directives by the Court to do so as well as two explicit warnings that such a failure to respond might result in dismissal of Phebus's claims against Byers. However, even though dismissal based on the Plaintiff's failure to prosecute his case against this Defendant is permissible, *see* Fed.R.Civ.P. 41(b), the Court will nonetheless address the merits of Phebus's claims on the evidence before it.

The Plaintiff has alleged Byers violated (1) his constitutional rights under the Fourth, Eighth and Fourteenth Amendments pursuant to §§ 1983 and 1988 [4]; (2) his rights under the Constitution of the State of Tennessee; and (3) Tennessee common law prohibitions against conspiracy, obstruction of justice, trespass, assault and battery and outrageous conduct.[5]

### A. *42 U.S.C. § 1983.*

#### 1. *Constitutional Violations.*

In his motion, Byers takes issue with the constitutional violations Phebus alleges as the bases for his § 1983 claim. For the same reasons set forth herein with respect to the City, the Plaintiff's claims against this Defendant under the Eighth and Fourteenth Amendments are DISMISSED.

 Byers also moves for dismissal of Phebus's Fourth Amendment excessive force claim. In order to prevail, a plaintiff must show that the defendant's actions were, under the circumstances, objectively unreasonable. *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir.), *cert. denied*, 531 U.S. 874, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In defining the boundaries of Fourth Amendment reasonableness, the Supreme Court has stated as follows:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests

---

**4.** Since, for the reasons set forth herein, the Plaintiff cannot prevail against the individual Defendant, his request for attorney's fees under § 1988 is DISMISSED. *See supra note* 1.

**5.** Although the Defendant argues for dismissal of the Plaintiff's claim of negligence, it does not appear to the Court from a reading of the

complaint that Phebus in fact asserted such a claim against Byers. Needless to say, a response filed on behalf of the Plaintiff would have served to clarify the nature of his claims against this particular Defendant. In any case, the Court deems it unnecessary to address the negligence portion of the Defendant's motion.

against the countervailing governmental interests at stake .... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight...

... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them ...

*Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) (internal citations and quotations omitted).

Byers stated in his affidavit, a copy of which is attached to his motion, as follows:

At approximately 8:30 p.m. I was dispatched to 5039 Verosa in connection with a domestic situation where the complainant had stated that her ex-husband was shining lights into her home. As I was approaching the scene I received updated information through the dispatcher that someone on the scene was armed with a gun. I arrived at the scene at about the same time as Officer Warren. When we approached the address we were met by six to ten males who were all talking at once. They stated that the suspect had just rounded the corner on foot leaving the scene. Officer Warren and I immediately got back into our cars and went looking for the suspect but did not find him. We returned to the Verosa address where we were again met with a crowd of six to ten males who were telling us that the suspect had jumped the fence in the back yard and was heading southbound. Officer Warren and I tried to set up a perimeter and I went down Sequoia checking the backyards. Officer Warren stayed on Verosa checking the backyards.

As I came out of one of the yards I observed a man diving into the back of a red pick up and the truck speeding off. I thought it might be the suspect so I started running westbound through the yards. As I was running I encountered the man I later learned was Mr. Phebus. He was standing still and I observed him with my flashlight to have a hand gun in his hand. I did not know who this person was at the time so I drew my weapon and ordered him to drop his gun. Mr. Phebus did not drop his weapon. When I told him to drop his gun, Mr. Phebus ran. I pursued him. He then turned and I observed him point his pistol in my direction. Mr. Phebus' actions placed me in reasonable fear of violent behavior and serious physical harm. I felt that Mr. Phebus was getting ready to shoot me. I shot three times striking Mr. Phebus. I fired in self defense....

After the shots I remained with my pistol drawn, as I still did not know who

Mr. Phebus was. Two other males approached after the shots and I warned them to stay back. I remained standing, pistol drawn, and stayed with Mr. Phebus until other officers arrived and handcuffed him....

After the shots I observed that the gun Mr. Phebus had been armed with was a silver Ruger handgun. I learned afterwards that the gun Mr. Phebus had in his possession had been loaded and the hammer had been cocked.

Mr. Phebus was charged with reckless endangerment and unlawful possession of a weapon.

At no time did I order, instruct, or ask any civilian to accompany me in the search for the suspect....

(Aff. of Joseph P. Byers at pp. 1–2, Ex. to Mot. to Dismiss and/or in the Alternative for Summ. J. of Def. Joseph Byers.) The Defendant also provided the Court with copies of documentation indicating that the Plaintiff pled guilty to charges of aggravated assault in connection with the incident giving rise to this lawsuit.

In *Celotex,* the Supreme Court, recognizing that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," articulated that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmov-

ing party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Thus, once Byers satisfied his burden of showing an absence of evidence supportive of the Plaintiff's claims that the officer's actions were objectively unreasonable, it became incumbent upon Phebus to "present significant probative evidence in support of his complaint to defeat the motion for summary judgment." *See Miles v. Booth,* 238 F.3d 422, 2000 WL 1800565, at *3 (6th Cir.2000) (citing *Anderson,* 477 U.S. at 248–50, 106 S.Ct. 2505); *see also* Fed.R.Civ.P. 56(c); *Reed v. Stewart,* 97 F.3d 1452, 1996 WL 549786, at *1 (6th Cir.1996). By completely failing to respond, and thereby standing only on the allegations contained in his complaint, the Plaintiff has failed to show the existence of a genuine issue remaining for trial, rendering summary judgment appropriate. *See Reed,* 97 F.3d 1452, 1996 WL 549786, at *1. As the Court has disposed of the Plaintiff's federal constitutional claims, it need not address Byers's arguments grounded on qualified immunity.

### B. *State Law Claims.*

Generally speaking, "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992), *reh'g denied* (Oct. 20, 1992) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966)). Whether to retain pendent state claims lies within the sound discretion of the trial court. *Weeks v. Portage County Executive Offices,* 235 F.3d 275, 279–80 (6th Cir.2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion). The Court finds that, as the Plaintiff's federal

claims against Byers have been dismissed, it is appropriate to dismiss without prejudice his claims under Tennessee state law as well.

### CONCLUSION

Based on the foregoing, the motion of the City to dismiss is GRANTED IN PART AND DENIED IN PART. The motion of Defendant Byers for summary judgment as to the federal claims against him is GRANTED and the remaining state claims against this individual Defendant are DISMISSED WITHOUT PREJUDICE.